Andrew W. Stavros (8615)
Austin B. Egan (13203)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
Email: andy@stavroslaw.com
austin@stavroslaw.com

*Attorneys for Plaintiff Annette Henrie*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **ANNETTE HENRIE,**<br><br>Plaintiff,<br><br>**vs.**<br><br>**CARBON SCHOOL DISTRICT,** a political subdivision of the State of Utah,<br><br>Defendant. | **COMPLAINT**<br><br>**(Jury Demand)**<br><br>**Case No.: 2:19-cv-00732-DB**<br><br>**Judge: Dee Benson** |

Plaintiff, Annette Henrie, by and through her counsel of record, hereby submits this Complaint against Defendant Carbon School District, and for causes of action, alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Annette Henrie is a resident of the State of Utah, Carbon County. At all times relevant to this Complaint, Ms. Henrie was employed by Carbon School District.

2.      Defendant Carbon School District is a political subdivision of the State of Utah, which provides educational and related services to residents of the State of Utah.

3.      Henrie has exhausted administrative remedies, having filed a charge of discrimination and retaliation with the Utah Labor Commission and Equal Employment Opportunity Commission and requested a right to sue letter from the EEOC and the U.S. Department of Justice.

4.      Henrie received the notice of right to sue letter, dated September 9, 2019, by and through her counsel, on September 12, 2019.

5.      This Court has jurisdiction pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f) ("Title VII"), from claims arising from the actions of Defendant in violation of Title VII. This Court also has jurisdiction under the Civil Rights Act of 1870, 42 U.S.C. § 1983, as well as Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 et seq., all as amended.

6.      The employment practices alleged to be unlawful and the other unlawful conduct complained of herein were committed in Carbon County, State of Utah, which is within the jurisdiction of the U.S. District Court for the District of Utah, Central Division. Accordingly, venue is proper pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391.

7.      At all times relevant to this Complaint, Henrie was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f).

8.      At all times relevant to this Complaint, Defendant Carbon School District was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

9.      At all times relevant hereto, Carbon School District employed more than fifteen (15) employees in the State of Utah.

## FACTUAL ALLEGATIONS

10.      As set forth in more detail herein, during her employment with Carbon School District, Henrie was subject to sexual harassment, discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), Section 1983 of the Civil Rights Act ("Section 1983"), as amended, and Title IX of the Education Amendments Act of 1972, as amended ("Title IX")

11.      Henrie is female.

12.      Henrie was hired by Carbon School District ("CSD") in 1985.

13.      At the time of her termination, Henrie's job title was "Special Ed Teacher." While Special Ed Teacher, Henrie was not properly classified and not paid appropriately and equitably for the type and level of work she performed, because of her gender.

14.      Henrie was also denied a promotion because of her gender and because of her prior complaints of harassment and discrimination, to an administrative position with pay and benefits commensurate with the type of work she performed for CSD and in accordance with its normal job classification procedures.

15.      During Henrie's employment, CSD was aware that Henrie was discriminated against on the basis of her gender in terms of her pay, benefits, classification and duties relative to other male employees within CSD.

16.      For example, in 2017, CSD's Assistant Superintendent, Judy Mainord, asked to meet with Henrie and told Henrie she was seen by everyone at CSD as part of administration and

3

they should pay Henrie accordingly. Mainord stated that Henrie deserved to be paid as an administrator for the job duties she was performing, and that she should demand CSD pay her back pay because of its discriminatory treatment of her. She also suggested to Henrie that she needed to stand up for women and pave the way for others, because the women at CSD were not treated fairly and they deserved a voice so that they would be treated with respect, dignity and paid in an equal and fair manner.

17.     During her employment, Henrie was subject harassment and discrimination because of her gender, beginning in 2012 and continuing until the end of her employment, by her supervisor, Robert Cox.

18.     The harassment of Henrie by Mr. Cox was ongoing, continual and severe and/or pervasive and interfered with Henrie's ability to perform her job, and CSD had actual and/or constructive knowledge of such harassment and discrimination and failed to take prompt and immediate action to correct such discrimination and harassment.

19.     For example, Mr. Cox would often ogle and stare at her and look at parts of Henrie's body that were offensive to her, and would be offensive to a reasonable person in Henrie's position.

20.     On one occasion when Henrie went to Mr. Cox's office to discuss a work-related issue, Mr. Cox spread his legs wide and began gyrating in his chair in a manner that had clear sexual overtones, and was offensive, threatening and humiliating to Henrie.

21.     On another occasion, Mr. Cox also looked Henrie up and down and stared at Henrie's breasts.

4

22.     Henrie was also aware of Mr. Cox's discriminatory treatment and harassment of other women with whom she worked, which made working conditions much more difficult, stressful, threatening and humiliating for Henrie.

23.     Henrie and other female employees were regularly demeaned, criticized and humiliated by Mr. Cox because of their gender, and treated disparately from male coworkers who worked with Mr. Cox.

24.     On February 3, 2015, Henrie met with Superintendent Carlson and Principal Mika Salas in her office because she could not go to HR because Mr. Cox was the Director of Human Resources. During the meeting, Henrie attempted to express her frustration and anxiety about Mr. Cox's treatment toward her, including his bullying, discrimination, harassment and intimidation, as well as his inappropriate treatment toward other women with whom Cox interacted.

25.     On February 9, 2015 a meeting was arranged with Superintendent Carlson, Henrie and Mr. Cox. During the meeting, Mr. Cox apologized for his prior actions.

26.     Less than a month later, however, Mr. Cox removed a day of Henrie's time for her hours worked, but when she complained to Superintendent Carlson, the day was added back.

27.     Undeterred, Mr. Cox continued to retaliate and make working conditions intolerable for Henrie. For example, he began to remove Henrie's ability to do her job, told teachers not to listen to what Henrie was telling them and engaged in other efforts to undermine her credibility and standing with coworkers. Mr. Cox also subjected Henrie to increased monitored at work and continued to harass, threaten and intimidate her and demean her and dismiss her in his interactions with her.

5

28.     In September, 2015 Henrie complained again to CSD about Mr. Cox's treatment of her during a meeting with teachers. Thereafter, on September 13, 2015, Henrie filed a formal written complaint about Mr. Cox's actions with the Superintendent.

29.     In October, 2015, a new job description, titled Special Education Specialist on a TOSA (Teacher on Special Assignment), was presented to Henrie, which listed Henrie under another supervisor, in addition to her current supervisor. But Henrie still reported to Mr. Cox and she was required to interact with him on a daily basis.

30.     On or about November 15, 2015, Superintendent Carlson told Henrie that he acknowledged that Mr. Cox's conduct was getting worse, and said he was going to make him move his office away from Henrie. Despite this acknowledgment, Mr. Cox's office was not moved until on or about May, 2016 and, after his office was moved, Mr. Cox continued to spend a significant amount of time in Henrie's presence so that he could intimidate and harass her.

31.     On November 9, 2016 Henrie had another meeting with Superintendent Carlson, Darin Lancaster, and her husband, Scott Henrie.

32.     During the meeting, Henrie complained about her supervisor's sexual harassment from prior years and was told she had to file a formal written complaint, but was not given details about what to include in her complaint.

33.     Henrie submitted a written complaint on November 20, 2016 but no investigation was conducted and no follow-up interview or request for additional details from Henrie was made by CSD.

34.     On or about November 30, 2016, Henrie found out that her access to certain records had been blocked by CSD.   And despite being told she would not need to interact with

Mr. Cox to perform her job, she was repeatedly forced to interact with him. During these interactions, Mr. Cox was demeaning, dismissive and condescending, and he continued to engage in efforts to retaliate against Henrie and treat her disparately because of her sex.

36.     In or about January 2017, Henrie received a disciplinary letter saying that she was saying bad things about her supervisors and was not helping teachers. The allegations in the disciplinary letter were untrue and were retaliatory in nature and designed to encourage Henrie to end her employment with CSD.

36.     In March, 2017 Henrie had additional duties removed from her position, which isolated her further, reduced her standing at CSD to materially changed the duties of her position, in an effort to cause Ms. Henrie's termination.

37.     In or about April, 2017 Henrie's supervisor intentionally invaded her personal space during an interaction at work, which threatened and offended Henrie.

38.     During this same time, Henrie was also cut off from all meetings, and from being able to do her job and carrying out the responsibilities that had been given to her.

39.     She was also told the Superintendent was leaving and that she again would fall directly under Mr. Cox's supervision.

40.     Because of these continuing actions, Henrie feared for her job and it was apparent to Henrie that CSD was attempting to force Henrie to quit. Moreover, it was clear to her that she would not be placed in the Special Education Coordinator position, despite the prior representations of Mr. Cox and CSD.

41.     Left with no alternative, and having all her complaints ignored and all her superiors against her, Henrie had no other alternative than to resign her employment with CSD on June 16, 2017.

### FIRST CAUSE OF ACTION
**(Sexual Harassment in Violation of Title VII)**

42.     Henrie hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

43.     Title VII prohibits discrimination on the basis of sex in the enjoyment of all benefits, privileges, terms and conditions of employment.

44.     Defendant CSD knew, or reasonably should have known, through its management-level employees, that Robert Cox was engaging in the unlawful and offensive behavior alleged above by sexually harassing and discriminating against Henrie.

45.     Defendant CSD had a duty to maintain a workplace free from sexual harassment and retaliation.

46.     Notwithstanding such duty, Defendant CSD failed to take sufficient actions to maintain a workplace free from harassment and retaliation, and failed to implement and enforce an effective sexual harassment policy.

47.     The failure of Defendant CSD to enforce the law and to protect Henrie constitutes negligence and makes it liable to Henrie for her damages alleged herein.

48.     Defendant CSD created, maintained, fostered, participated and/or ratified a sexually hostile work environment in which discriminatory intimidation, ridicule and insult were so severe and pervasive that it altered the terms and conditions of Henrie's employment.

49.     Defendant CSD knew or should have known that Cox was harassing Henrie but failed to take prompt and reasonable action to prevent the harassment, intimidation and retaliation received by Henrie.

50.     The facts described above constituted both a pervasive hostile environment and a severe hostile work environment in violation of Title VII.

51.     CSD is directly and strictly liable for Cox's harassment of Henrie in violation of Title VII.

52.     Defendant CSD's actions or inactions have directly and proximately caused Henrie substantial past and future economic loss, including medical and counseling expenses, lost wages, damage to her career and professional reputation, and emotional distress, and pain and suffering, in an amount to be determined at trial.

53.     Henrie is also entitled to her reasonable expenses and attorneys' fees pursuant to Title VII.

## SECOND CAUSE OF ACTION
### (Sex Discrimination in Violation of Title VII Against Carbon School District)

54.     Henrie hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

55.     Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination by an employer against an employee because of the employee's sex.

56.     The adverse employment actions taken against Henrie, including failing to classify, pay and treat Henrie equally and causing her termination of employment, were motivated by Henrie's sex.

9

57.     Defendant CSD's actions have directly and proximately caused Henrie substantial past and future economic loss, including lost wages, damage to her career, humiliation and pain and suffering, in an amount to be determined at trial.

58.     Henrie is also entitled to her reasonable expenses and attorneys' fees pursuant to Title VII.

## THIRD CAUSE OF ACTION
### (Retaliation in Violation of Title VII Against Carbon School District)

59.     Henrie hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

60.     Title VII prohibits retaliation against any employee for engaging in opposition to unlawful discrimination.

61.     Henrie engaged in protected activity by opposing the treatment she received from Cox and others – which she reasonably believed constituted unlawful discrimination, harassment on the basis of her gender, and unlawful harassment.

62.     CSD's response to Henrie's protected activity, as described more fully above, and its constructive termination of Henrie, in response to her opposing and reporting discrimination, harassment and retaliation, constitutes retaliation prohibited by Title VII.

63.     CSD's actions or inactions have directly and proximately caused Henrie substantial past and future economic loss, including lost wages, damage to her career, humiliation and pain and suffering, emotional distress and other damages in an amount to be determined at trial.

64.     Henrie is also entitled to her reasonable expenses and attorneys' fees pursuant to Title VII.

### FOURTH CAUSE OF ACTION
#### (Violation of 42 U.S.C. §1983 – Equal Protection)

65.     Henrie hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

66.     Henrie is female and thus a member of a protected class under the Equal Protection Clause of the U.S. Constitution, the Fourteenth Amendment, which is applied to the State through the Fifth Amendment's Due Process Clause.

67.     As outlined above, CSD purposefully and intentionally discriminated and retaliated against Henrie following her complaints about Cox's discrimination and harassment, and her complaints about retaliation, in violation of the Equal Protection Clause and Section 1983 by engaging in, or allowing, the sexual harassment outlined above, and causing her termination for reporting the sexual harassment and opposing the subsequent harassment and retaliation of her.

68.     These adverse actions were taken by officials of Defendant CSD who had final policy making authority. If they did not have such authority, CSD is still liable as it knew about the discriminatory and retaliatory conduct and took no steps to stop it.

69.     CSD's conduct violated clearly established constitutional rights of equal protection of which a reasonable person should have known.

70.     Defendant CSD ratified the actions of Cox and others by, on information and belief, others, failing to ensure that such offensive and sexually harassing behavior did not occur,

or by failing to take reasonable steps to stop Cox, by allowing Henrie to be subjected to discriminatory pay practices and other treatment that was illegal, as more fully alleged above.

71.     As a direct and proximate result of CSD's unlawful actions, Henrie has suffered damages and is entitled to recover damages, both economic and non-economic, including loss of wages and benefits, future pecuniary losses, emotional distress and other damages as allowed by law as established by proof at trial.

72.     Henrie is also entitled, under 42 U.S.C. § 1988, to recover attorneys' fees and costs incurred in prosecuting this action, and such other further and additional relief as allowed under relevant law.

### FIFTH CAUSE OF ACTION
### (Violation of Title IX, 20 U.S.C. §§ 1681–1688)

73.     Henrie hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

74.     Title IX provides that "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

75.     Defendant CSD received federal financial assistance and is an education program under Title IX.

76.     As alleged more fully above, Henrie was subject to sexual harassment and discrimination on the basis of her gender and then retaliated against because of her protected activity.

12

77.     CSD officials with authority to institute corrective measures had actual notice that Henrie was subjected to gender discrimination and sexual harassment and retaliation, but failed to take action to stop such conduct.

78.     CSD and its officials with authority to institute corrective measures were deliberately indifferent to the sexual harassment and discrimination of Henrie and its responses to the discrimination, harassment and retaliation were clearly unreasonable in light of the known facts and circumstances.

79.     CSD's deliberate indifference to known acts of harassment, discrimination and retaliation, caused Henrie to suffer damages.

80.     Had CSD not been deliberately indifferent to the harassment, discrimination and retaliation experienced by Henrie, and instead complied with its own policies and federal law by promptly investigating Henrie's complaints of harassment, discrimination and retaliation, sanctioning and terminating Cox and others for allowing such conduct, Henrie would not have been subjected to further harassment, discrimination and retaliation, and constructively terminated from her position.

81.     As a direct and proximate result of Defendant CSD's unlawful actions, Henrie has suffered damages and is entitled to recover damages, both economic and non-economic, including loss of wages and benefits, future pecuniary losses, emotional distress and other damages as allowed by law as established by proof at trial.

82.     Henrie is also entitled, under 42 U.S.C. § 1988, to recover attorneys' fees and costs incurred in prosecuting this action.

**<u>JURY DEMAND</u>**

13

Henrie hereby requests a trial by jury on all claims and causes of action so triable under Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

WHEREFORE, Henrie prays for judgment and relief as follows:

1.     For Henrie's favor and against Defendant for all causes of action asserted herein;

2.     For all wages, compensation and other economic benefits lost as a result of Defendant's actions and omissions;

3.     For all special and general damages available to Henrie, including pecuniary and non-pecuniary losses;

4.     For an award of attorney fees and costs, as allowed by the foregoing claims;

5.     For an award of compensatory and/or consequential damages, as allowed by law;

6.     For prejudgment and post-judgment interest as allowed by law; and

7.     For such additional and other relief the court deems just and equitable.

 DATED this 3rd day of October, 2019.

/s/     **Andrew W. Stavros**
Andrew W. Stavros
STAVROS LAW P.C.
*Attorneys for Plaintiff*

14